**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yvonne R., | No. CV-24-00881-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Yvonne R. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA") final decision denying her disability insurance benefits. For the following reasons, the Administrative Law Judge's ("ALJ") decision is affirmed.

**I.     BACKGROUND**

Claimant protectively filed an application for disability insurance benefits on January 2, 2021. (Administrative Record ("AR") 18.) In the ALJ's decision, the ALJ determined Claimant had the severe impairments of psoriatic arthritis with skin disorder, degenerative disc disease, arthralgia, obesity, generalized anxiety disorder/anxiety disorder not otherwise specified, posttraumatic stress disorder, and major depressive disorder/depressive disorder. (AR 20.) The ALJ evaluated the medical evidence and testimony and ultimately concluded that Claimant was not disabled. (AR 25–34.) In doing

---
[1] As a matter of practice, the Court refers to Claimant as such and, at most, by her first name and last initial to protect her privacy.

so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform light work with the following limitations: Claimant could "stand and/or walk about six hours total and sit about six hours total in an eight-hour workday"; "frequently climb ramps, stairs and ladders, balance, stoop, kneel, crouch, and crawl"; "never climb ropes or scaffolds"; "avoid concentrated exposure to hazards, including unprotected heights"; "have occasional superficial interaction with the public and co-workers"; and "have no crowd contact, which would be no contact with more than ten people." (AR 25.) Based on the RFC formulation and the testimony of the Vocational Expert ("VE") at the hearing, the ALJ found that Claimant could perform jobs such as assembler – small parts, sub-assembler, and assembler, such that she was not under a disability as defined in the Social Security Act (the "Act"). (AR 33–34.)

The ALJ thus denied Claimant's claim, (AR 34), and the Appeals Council denied her request for review, (AR 1). Claimant then appealed to this Court.

## II.     LEGAL STANDARD

The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside SSA's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole. *Id.* But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to SSA at step five. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most he can do with his impairments— and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099. If so, the claimant is not disabled. *Id.*

### III. DISCUSSION

Claimant raises the following arguments for the Court's consideration: (1) whether the ALJ erred in rejecting the opinion of Dr. Farrah Hauke, an examining psychologist; (2) whether the ALJ erred by discounting Claimant's mental symptom testimony;[2] and (3) whether new evidence warrants remand to SSA for further proceedings. (Doc. 12 at 1, 3.)[3] The Court considers each argument in turn.

#### A. Medical Opinion Evidence

Under current agency regulations, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785,

---

[2] Claimant does not dispute SSA's argument that her challenges are only to the ALJ's assessment of her mental impairments. (Doc. 15 at 1–2 n.1.)

[3] Claimant did not file a reply in response to SSA's answering brief, and the time for her to do so has expired.

791–92 (9th Cir. 2022). Instead, an ALJ will evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted). An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (first alteration in original) (quotation marks omitted). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787.

The ALJ found Dr. Hauke's opinion "only partially persuasive as the greater record is generally not consistent with her findings, as it reflects normal cognitive findings and significant cognitive findings of daily living." (AR 32.) The ALJ noted that Dr. Hauke "seem[ed] to support her conclusions on the claimant's subjective reports." (*Id.*) The ALJ also found Dr. Hauke's opinion "partially persuasive only as [it] supports that the impairments are severe," but as for Dr. Hauke's other opinions, Claimant was "able to handle many changes." (*Id.*) Last, the ALJ found that the "limitations noted by Dr. Hauke are not supported by the other medical evidence in the record and the claimant's acknowledged activity level." (*Id.*) Claimant argues these findings are not supported by substantial evidence. (Doc. 12 at 4–9.)

### 1. Reliance on Claimant's Subjective Reports

Claimant argues that, contrary to the ALJ's decision, Dr. Hauke "indicated her sources of information included a review of collateral information, a clinical interview of the plaintiff and a Mini Mental Status Examination" and that Dr. Hauke herself observed that Claimant "had an anxious and depressed affect with brief tearfulness, and that she was a reliable historian." (Doc. 12 at 5.) The Court ultimately agrees with Claimant that this

1  was an insufficient reason to discount Dr. Hauke's opinion.  The Ninth Circuit has stated
2  that the "rule allowing an ALJ to reject opinions based on self-reports does not apply in the
3  same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049
4  (9th Cir. 2017).[4]  This is because psychological "[d]iagnoses will always depend in part on
5  the patient's self-report, as well as on the clinician's observations of the patient.  *But such*
6  *is the nature of psychiatry*." *Id.* (emphasis added).  Accordingly, the Court cannot affirm
7  this reason for discounting Dr. Hauke's opinion.  *See, e.g.*, *Gallant v. Saul*, 783 F. App'x
8  688, 691 (9th Cir. 2019) (mem. decision) (per curiam) ("It is completely appropriate for
9  mental health professionals to rely on their patient's subjective reports.  Thus, a
10 psychologist's reliance on subjective reports, without more, is not a legitimate reason for
11 discrediting the psychologist's opinion."); *Carter v. Comm'r of Soc. Sec.*, 2025 WL
12 747429, at *9 (W.D. Wash. 2025) (holding that ALJ's discounting of clinical
13 psychologist's opinion based on findings that the opinion was "heavily based on subjective
14 reporting of the Claimant" was not supported by substantial evidence); *Angel D. v.*
15 *Kijakazi*, 2024 WL 4312213, at *7 (N.D. Cal. 2024) ("In addition to the testing and hearing
16 Plaintiff's reports, Dr. Wiebe also made her own observations.  It cannot be disputed that
17 her assessment was, in all respects, a typical psychological evaluation.  That it relied in
18 part on Plaintiff's self-reports is not a valid reason for rejecting it.").

19       Nevertheless, the Court finds that the ALJ's error was harmless because, as
20 discussed below, the ALJ offered other reasons for discounting Dr. Hauke's opinions as
21 "not supported by the other medical evidence in the record and the claimant's
22 acknowledged activity level," (AR 32), and these reasons were supported by substantial
23 evidence, *cf. Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) (mem. decision) (per

---

[4] Although *Buck* was decided under the previous regulatory scheme for considering medical opinion evidence, it is still persuasive, at the very least, to the Court's decision here. The Ninth Circuit has not decided whether reliance on subjective reports properly falls under the supportability or consistency factor in the new regulatory scheme, and the court's unpublished decisions are mixed. *Compare Romero v. O'Malley*, 2024 WL 4919515, at *2 (9th Cir. 2024) (mem. decision) (per curiam) (discussing in connection with supportability factor), *with Martinez v. Saul*, 859 F. App'x 142, 143 (9th Cir. 2021) (mem. decision) (per curiam) (analyzing in connection with consistency factor). The Court does not address this issue, however, because the parties have not briefed it.

- 5 -

curiam) (ALJ's error in discounting medical opinion based on reliance on self-reports was harmless).

### 2.     Normal Cognitive Findings

As for the ALJ's rejection of Dr. Hauke's opinion because of normal cognitive findings in the record, (AR 32), Claimant argues that the ALJ improperly conflated "two separate categories of mental limitation—the ability to understand and remember and the ability to sustain concentration and persist in a work setting." (Doc. 12 at 5.)  Moreover, she argues, her "*cognitive* abilities [are] not the alleged impairment, but rather severe *mood* symptoms which [are] reflected in the mood/affect portions of mental status exams." (*Id.*) She notes that "[m]any of the cognitive exams relied on by the ALJ corroborated findings of an anxious and depressed mood/affect," and the "sole exam cited by the ALJ that did not contain abnormal mood and affect findings was a phone call with her primary care to discuss diabetes management." (*Id.* at 5–6.)

Although Claimant's analysis is reasonable, Claimant has not shown that the ALJ's findings were unreasonable or that Claimant's interpretation is the *only* rational one.  *See, e.g.*, *Tanner R. v. Comm'r of Soc. Sec.*, 2023 WL 1098344, at *3 (W.D. Wash. 2023) ("Because Plaintiff has not shown that the ALJ's interpretation is unreasonable, he has failed to establish harmful legal error . . . .").  A reasonable mind could accept that intact or normal abilities to understand, concentrate, exercise insight and judgment, remember, and comprehend, (AR 704, 1295, 1420, 1662), are inconsistent with findings that Claimant is unable to maintain regular work attendance due to psychiatric symptoms, (AR 704–05). *See, e.g.*, *Ford v. Comm'r of Soc. Sec.*, 2023 WL 5021162, at *8 (E.D. Cal. 2023) (ALJ's reasoning for discounting psychiatrist's opinion was supported by substantial evidence when the psychiatrist observed normal findings for areas including behavior, appearance, speech, thought content, orientation, attention, concentration, fund of knowledge, insight, and judgment); *Roger W. v. Comm'r of Soc. Sec.*, 2021 WL 5822648, at *2 (W.D. Wash. 2021) ("[T]he ALJ reasonably found the evidence of Plaintiff's normal cognitive and social functioning . . . to be inconsistent with the disabling persistence, social, and adaptation

limitations Dr. Morgan described.").

Furthermore, the ALJ accounted for Claimant's impairments, (AR 29), which the ALJ agreed with Dr. Hauke were severe, (AR 32). *See Styma v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2681337, at *5 (D. Ariz. 2022) ("[T]he ALJ found that Plaintiff's mental status examinations returned normal findings. Though Plaintiff argues that the findings are irrelevant . . . the ALJ accounted for Plaintiff's anxiety and depression in determining Plaintiff's limitations. Thus, the ALJ properly considered Plaintiff's mental impairments." (citations and quotation marks omitted)); *see also Sandra I. v. Comm'r of Soc. Sec.*, 2024 WL 4336451, at *2–3 (W.D. Wash. 2024) (similar). The Court must therefore defer to the ALJ. *Orn*, 495 F.3d at 630; *see also Patricia B. v. Kijakazi*, 2022 WL 17220706, at *4 (E.D. Wash. 2022) ("[E]ven if the evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld.").

As for the ALJ's finding that Claimant engaged in "significant cognitive activities of daily living," (AR 32), Claimant argues that she engaged in online grocery ordering over the computer, and later did so on her phone, and the ALJ did not explain how this "conflicts with Dr. Hauke's opinion that [her] impairments would limit her ability to persist during a 40-hour work week." (Doc. 12 at 6.) She concludes that the "ALJ's reasoning here is unclear and does not form a logical bridge." (*Id.* 6–7.) The Court disagrees.

Claimant misunderstands the ALJ's decision. The ALJ included computer usage as an example of the "significant cognitive activities of daily living" Claimant reported, not as the only basis for this finding. (AR 32.) Although the ALJ explained his reasoning with "less than ideal clarity," the Court is satisfied based on its review of the exhibits the ALJ cited in support of his finding that, even if the ALJ committed legal error, any error is harmless because the ALJ's "path may reasonably be discerned," and that path is supported by substantial evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted). For example, Claimant reported that she spends a significant part of her day caring for her three children (one of whom was a toddler), engages in chores like

cleaning and laundry, manages groceries and toiletries for her family, manages the family's finances, and can follow written and spoken instructions. (AR 272–76, 311–15.) It was reasonable for the ALJ to conclude that Claimant reported "significant cognitive activities" and that such activities were inconsistent with Dr. Hauke's findings. Accordingly, the Court again upholds the ALJ's finding. *Thomas*, 278 F.3d at 954. *Cf. Tanner R.*, 2023 WL 1098344, at *4 ("Adhering to a schedule requires some degree of judgment and goal-directed thinking, and it is reasonable to find that Plaintiff's normal findings as to judgment and goal-directed thought processes undermined the State agency consultants' suggestion that Plaintiff could not maintain a work schedule without a timer.").

### 3.    Ability to Handle Change

Claimant also argues the ALJ erred in rejecting Dr. Hauke's opinion that Claimant "does not seem able to respond appropriately to changes in the work setting on a consistent basis at this time." (AR 705.) The ALJ found that Claimant "was able to handle many changes, such as closing of schools during COVID pandemic, having a baby, her son's new schedule, changes in responsibilities as relatives needed her help or passed away, and the changes of traveling to and visiting different places." (AR 32.) Claimant claims this finding was error because the evidence does not support that she was able to "handle" those events "well", as demonstrated by treatment records around the relevant period. (Doc. 12 at 7–9.) She notes that she developed an adjustment disorder after having her baby, which undermines the ALJ's conclusion she was able to handle having a baby. (*Id.* at 8.) She also argues she did not travel "for fun, but rather out of necessity." (*Id.* at 9.)

Although the Court agrees with Claimant that not every instance cited by the ALJ exemplified Claimant's ability to handle change—particularly the birth of Claimant's child, given her diagnosis of adjustment disorder during that period, (*see* AR 421–32)—the ALJ offered several instances that are supported by substantial evidence, such that any error in citing insufficient instances is harmless. It was reasonable for the ALJ to find that Claimant's multiple trips, one of which was outside of this country, (AR 68), was inconsistent with Dr. Hauke's conclusions that Claimant was unable to handle change.

- 8 -

*Liner v. Comm'r of Soc. Sec.*, 2020 WL 2219316, at *3 (W.D. Wash. 2020) (holding that the ALJ did not err in finding that taking trips, including air travel, was inconsistent with a treating psychologist's medical opinion).

Claimant does not meaningfully challenge the ALJ's finding that Claimant was able to handle her son's new schedule or changes in responsibilities when family members needed help or passed away, only arguing that the ALJ "did not cite to the evidence on which he relied." (Doc. 12 at 8.) This does not meet her burden of showing that the ALJ's findings were unsupported by substantial evidence or unreasonable, but even if she had demonstrated error, her bare assertion does not meet her burden of showing that any error was harmful. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (alteration in original) (citation omitted)), *superseded by regulation on other grounds as stated in Farlow v. Kijakazi*, 53 F.4th 485 (9th Cir. 2022); *Sekiya v. Gates*, 508 F.3d 971, 977 (9th Cir. 2007) ("Bare assertions . . . unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present appellant's contentions and the reasons for them." (quotation marks omitted)); *Tanner R.*, 2023 WL 1098344, at *3 ("Because Plaintiff has not shown that the ALJ's interpretation is unreasonable, he has failed to establish harmful legal error in this portion of the ALJ's decision.").

The Court affirms the ALJ's decision to discount Dr. Hauke's opinion.

### B. Symptom Testimony

The ALJ found that Claimant's impairments were not as limiting as she alleged, in light of the medical evidence in the record and her activities of daily living ("Activities"). (AR 26–29.) Claimant argues the ALJ did not provide legally sufficient grounds supported by substantial evidence to discount her symptom testimony. (Doc. 12 at 10–14.) Specifically, she argues that (1) her Activities did not undermine her symptom testimony, (*id.* at 11–12); and (2) the record did not reflect that medication was effective in managing her symptoms, (*id.* at 13–14). Upon the Court's review of the record, the Court concludes

the ALJ's reasons for discounting Claimant's testimony were specific, clear, and convincing, and were supported by substantial evidence in the record.

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted). As the Ninth Circuit has stated, "[t]his is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). That said, an ALJ is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted). And an ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

### 1. Activities of Daily Living

With regard to Claimant's Activities, the ALJ found:

> The claimant's activities reflect significant mental and physical capability and are not consistent with her alleged limitations. For instance, she resides with her three-year-old son and thirteen-year-old daughter, as well as her nineteen-year-old son who attends school in the morning and works at night. The claimant is the sole responsible parent, and the two oldest children have no contact with their natural father. The daughter has mental health issues, and the claimant participates in counseling for her by telemedicine. The claimant participates in all school matters for the children, including registration and parent/teacher conferences, usually by phone conference. The claimant helps her children with homework, and she watches movies and plays board games with children. The claimant owns a cell phone, and she uses it to send text messages, check email twice a week, and occasionally take photos. A niece resided with the claimant through

>   September 2020. The claimant does some household chores, although she reported getting help from a friend three or four times a week and her mother visits on weekends. The claimant has her own vehicle and drives, including to pick up groceries, attend doctor appointments, and take her children to school or Head Start. She took a trip by airplane to California in January 2023 with her son for her grandmother's funeral for two days. She also drove with her mother and uncle to California in January 2022 and December 2020 for funerals. She drove with her sister-in-law to Mexico in April 2019 with her youngest child. She manages home finances and pays bills.
>
>   The record reflects the claimant reporting other substantial activities. She told one consultative examiner that she was able to complete some home and self-care activities including meals, personal hygiene, and light housework. She told the psychological consultative examiner that she cared for her hygiene and assisted or ensured her children's hygiene. She could use her phone and the internet, pay bills, manage finances, sweep, dust, mop, and prepare meals. The claimant babysat for an entire week. In addition, other trips made by the claimant are revealed in the record. The claimant went to California with her partner around November 2019, and she went in October 2019 because her grandparents were sick. In October 2021, she visited Tucson and "had a great experience" visiting San Xavier.

(AR 26–27 (citations omitted).) Claimant argues that (1) being a single parent to three children, (2) attending health and school appointments for her children, (3) texting, (4) attending funerals, and (5) some self- and home-care, are insufficient to discount her testimony about the severity of her symptoms. (Doc. 12 at 11–12.) Claimant does not address many other activities the ALJ cited[5] in support of his conclusion that Claimant's Activities were inconsistent with her testimony, so even assuming the ALJ erred in his consideration of the activities Claimant challenges, her failure to challenge other independent bases for the ALJ's conclusion renders any error harmless. *See, e.g.*, *Goldman v. Berryhill*, 2019 WL 498996, at *6 (E.D. Cal. 2019) ("[P]laintiff's failure to challenge the ALJ's credibility determination in its entirety would render any such error harmless."); *Card v. Carolyn*, 2014 WL 989251, at *4 (W.D. Wash. 2014) ("[Claimant's] failure to challenge all of the reasons provided by the ALJ for discounting her credibility renders any

---

[5] These activities include (1) helping her children with homework, (2) taking her children to school, (3) taking trips unrelated to funerals, (4) paying bills and managing finances, and (5) babysitting for one week. (*Compare* AR 26–27, *with* Doc. 12 at 11–12.)

- 11 -

errors at most harmless.").[6]

Even considering Claimant's challenges, however, the Court finds that the challenged reasons are legally sufficient to discount Claimant's testimony and supported by substantial evidence. Claimant argues her activities of caring for her three children, including self- and home-care, are significantly impaired by her symptoms, but she does not argue that the ALJ was incorrect or that the ALJ's interpretation of the record or her testimony was unreasonable. (Doc. 12 at 11–12.) In fact, the ALJ acknowledged Claimant's symptoms affected her Activities. (*See* AR 26 ("The claimant does *some* household chores . . . ." (emphasis added)); AR 27 ("She . . . was able to complete *some* home and self-care activities . . . ." (emphasis added)).) There is no dispute that Claimant engages in these activities, and the ALJ did not err by finding them inconsistent with her testimony. *See, e.g.*, *Sandra I.*, 2024 WL 4336451, at *5 (holding ALJ's finding was supported by substantial evidence that claimant's Activities of "caring for herself and three young children, preparing meals, performing household chores, shopping, managing finances, driving, attending group therapy, taking college courses, working as an intern, and earning a bachelor's degree" were inconsistent with debilitating mental impairments); *Jennifer H. v. Comm'r of Soc. Sec. Admin.*, 2023 WL 5748785, at *4 (D. Or. 2023) (affirming ALJ's discounting of symptom testimony based on claimant's travel and that she was "able to care for her young daughter" because the "Ninth Circuit has held that attending to a child's needs and taking them to places, such as school, is reasonably inconsistent with allegations of debilitating symptoms."); *Christine V. v. Berryhill*, 2019 WL 2516871, at *7 (C.D. Cal. 2019) (affirming ALJ's discounting of symptom testimony based on Activities where claimant "spen[t] a substantial part of her day performing activities . . . i.e., regularly exercising at the gym, preparing simple meals, caring for children and animals, driving children to school and activities, computer use, paying bills,

---

[6] Claimant also doesn't challenge the ALJ's extensive analysis that Claimant's alleged symptoms did not require further limitations than what the ALJ included in the RFC, because her allegations were inconsistent with the medical evidence in the record, (AR 29–31).

- 12 -

emailing, and online shopping").

### 2. Improvement/Effectiveness of Medication

The ALJ found that medications effectively managed Claimant's symptoms:

> Medications were Lexapro, Abilify, Klonopin, and trazodone. Trazodone was eventually discontinued, and doxepin and prazosin were added. The consistency of the claimant's primary medications for much of the relevant period generally reflects the effectiveness of the medication, although some adjustment was needed over the course of time. In April 2022, the claimant was using Klonopin less but had only two anxiety attacks, and she reported doing "ok."

(AR 30 (citations omitted).) Claimant argues that because her "mood and affect were flat" during the appointment referenced by the ALJ and her "therapist recommended an SMI [Serious Mental Illness] evaluation so that she could access a higher level of psychiatric care" the following month, the ALJ erred in concluding that her symptoms were controlled. (Doc. 12 at 13.)

Setting aside that Claimant only meaningfully challenges the last sentence of the ALJ's findings, (*compare* AR 30, *with* Doc. 12 at 13), Claimant's cited record evidence is a mixed bag. The same record evidence she cites as favorable also includes notes that "chronic impairments are not supported," "[Claimant] has reported improved symptoms," "controlled symptoms were reported," and the "records don't support the need for a higher level of care." (AR 1363.) In fact, the SMI evaluator originally contacted Claimant's therapist and "explained that SMI criteria were not supported with the current information." (*Id.*) It was only later that Claimant's therapist told the SMI evaluator Claimant "continued to deteriorate and continues to present with difficulty managing her symptoms." (AR 1368.) Further, even once Claimant was seen by the SMI evaluator, Claimant's medication was "[c]ontinue[d] . . . with no changes," other than Claimant "self start[ing] taking 5 mg prazosin" to help with sleep. (AR 1369–70.) Accordingly, even after considering Claimant's therapist's statements that Claimant had difficulty managing her symptoms, there were no significant changes to her medications at the alleged higher level of care, which supports the ALJ's findings.

- 13 -

It is the ALJ's responsibility—not the Court's—to resolve conflicts in the medical record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Torres v. Astrue*, 2012 WL 1032897, at *6 (C.D. Cal. 2012) (deferring to the ALJ's decision where references in the record supported both impairment and non-impairment, because "[i]t is the ALJ's province to resolve conflicts in the medical record"). Because Claimant has not offered any other basis to challenge the ALJ's findings of medication effectiveness, the Court finds that the ALJ did not err in discounting Claimant's testimony on this basis.

### C. New Evidence

Last, Claimant argues new evidence—specifically, opinion evidence from Nurse Practitioner Molly Millsaps—warrants remand. (Doc. 12 at 14.) SSA concedes that, because the Appeals Council considered this evidence, (*see* AR 2),[7] and Millsaps' opinion is in the administrative record, (AR 42–44), the Court must consider the opinion in determining whether the ALJ's decision is supported by substantial evidence. (Doc. 15 at 17.) The Court thus considers Millsaps' opinion as part of the record. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Even considering Millsaps' opinion, however, the Court still finds the ALJ's decision was supported by substantial evidence. As an initial matter, Millsap provided conclusory statements in largely checkbox form, without explanation or reference to specific records, (*see* AR 42–44). *See Hensley v. Kijakazi*, 2023 WL 4700635, at *1 (9th Cir. 2023) (mem. decision) (per curiam) (affirming ALJ's decision as supported by substantial evidence, even considering new evidence, where the medical opinion was "cursory," "reference[d] no objective evidence," and contradicted other evidence in the record); *Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (noting that the court has "accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation").

Additionally, although Claimant argues Millsaps' opinion is "consistent with that

---

[7] The Appeals Council stated the new evidence did "not relate to the period at issue" and did "not affect the decision about whether [Claimant was] disabled beginning on or before April 20, 2023." (AR 2.)

- 14 -

of rejected opinion Dr. Hauke," (Doc. 12 at 15), it was not, as discussed below. In any event, it is unlikely that, had the ALJ considered Millsaps' opinion, the ALJ would have found it persuasive given that Millsaps came to similar conclusions as Dr. Hauke, whose opinions the ALJ discounted as inconsistent with other evidence in the record. *Bowling v. Colvin*, 2013 WL 2370623, at *12 (D. Ariz. 2013) (affirming ALJ's decision where the new evidence would not have "altered the ALJ's final determination [that the claimant was] not disabled").

Finally, Millsaps' opinion is inconsistent with other evidence in the record, including that of Dr. Hauke. *Gonzalez v. Soc. Sec. Admin. Comm'r*, 2014 WL 1053657, at *6 (D. Ariz. 2014) (considering new evidence and finding ALJ's decision nevertheless supported by substantial evidence where the new opinion was "inconsistent with substantial evidence in the record"). For example, although Millsaps opined Claimant would be off-task for 10-15% or more of an 8-hour work day" with regard to her understanding and memory, Dr. Hauke concluded "no deficits were observed" with Claimant's understanding and memory, noting Claimant was "able to manage her finances and rear three children independently," she received a "score on the MMSE . . . that was within normal limits," and she was "able to understand and remember both simple and detailed instructions/procedures."  (AR 704.)  The ALJ, too, cited extensive records showing normal cognitive findings, which Claimant did not argue was inaccurate. (AR 30.) Additionally, although Millsaps opined Claimant would be off-task for 10% or more of an 8-hour workday with regard to social interaction, the ALJ applied non-exertional limitations to Claimant's RFC to address social impairments. (AR 29 ("The claimant's mental health impairments are genuine impairments that must be addressed by limitation to no more than occasional superficial interaction with the public and co-workers and no crowd contact, which would be more than ten people.").) And although Millsaps opined Claimant would be off-task for 10-15% or more of an 8-hour workday with regard to adaptation, substantial evidence supports the ALJ's finding that Claimant was able to handle change, as discussed above. Thus, even considering Millsaps' opinion, substantial

evidence still supports the ALJ's decision. *Hensley*, 2023 WL 4700635, at *1.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 30th day of May, 2025.

_____
Honorable Sharad H. Desai
United States District Judge